**Marquis Aurbach**
Chad F. Clement, Esq.
Nevada Bar No. 12192
Alexander K. Calaway, Esq.
Nevada Bar No. 15188
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
cclement@maclaw.com
acalaway@maclaw.com
  *Attorneys for Plaintiffs*

UNITED STATE DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WHITE ROCKS (BVI) HOLDINGS INC., et al. | Case No.: 2:24-cv-01222-JAD-NJK |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' EMERGENCY MOTION TO REMAND AND REQUEST FOR FEES AND COSTS** |
| DAVID REICHMAN, KATHY M. GRIFFIN, FRANK BENINTENDO, DONALD GILBERT, DOES I THROUGH X, INCLUSIVE, and ROE CORPORATIONS I THROUGH X, inclusive, | |
| Defendants, | |
| GLOBAL TECH INDUSTRIES GROUP INC., | |
| Nominal Defendant. | |

Plaintiffs, by and through their counsel of record, Marquis Aurbach, hereby file their Emergency Motion to Remand and Request for Fees and Costs (the "Motion"). This Motion is based on the following Memorandum of Points and Authorities, the declaration of Alexander K. Calaway, Esq. attached to the Motion as **Exhibit 1**, the papers and pleadings on file in this action, and any oral argument entertained by the court at the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Plaintiffs move to remand this case to the Nevada State Court on an emergency basis pursuant to Local Rule 7-4. An emergency hearing is warranted here because the individual defendants, David Reichman, Kathy M. Griffin ("Griffin"), Frank Benintendo, Donald Gilbert

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   (collectively "Management"), have put both the Plaintiffs and the nominal defendant, Global
2   Tech Industries Group Inc. ("GTII"), in immediate, imminent risk of irreparable harm.

3         Specifically, Management has engaged in fraud and collusion; caused GTII to be
4   delinquent with its public financials; and is presently misleading investors and stockholders with
5   their fraudulent financials. ECF No. 1-7, at pg. 6. Without immediate intervention, GTII will be
6   delisted from the public OTC Market Exchange ("OTC")[1] on July 16, 2024 (**Ex. 2**), thus
7   irreparably harming GTII and its stockholders. This is why Plaintiffs moved the Nevada State
8   Court on an expedited basis, pursuant to NRS 78.650 and NRS 30.010, to appoint a receiver to
9   take immediate take control of GTII (the "Receiver Motion"). ECF No. 1-7, at pg. 6.
10  Acknowledging the exigency of the situation, the Nevada State Court granted Plaintiffs' request
11  for an expedited hearing (ECF No. 1-7, at pg. 2), but minutes before the hearing, and before the
12  unopposed Receiver Motion could be heard, Defendants removed the case (ECF No. 1).

13        Now, the problem with Defendants' removal is that this Court lacks original jurisdiction
14  over the parties' and their claims. First, there is no diversity jurisdiction, because Ms. Griffin and
15  at least four (4) of the individual plaintiffs, Todd Pomeroy, Madeleine Pomeroy, Isabella
16  Pomeroy, and Sophia Pomeroy (collectively the "Pomeroys") are undisputedly citizens of
17  Massachusetts. **Ex. 1**, at ¶10; **Ex. 6.** Second, federal question jurisdiction clearly does not arise
18  here, because none of Plaintiffs' claims in their properly pleaded complaint arise under the
19  Constitution, laws, or treaties of the United States. ECF No. 1-3. Third, there is no basis to
20  exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), because Plaintiffs have only
21  brought state-law claims. In light of all of this, it is abundantly clear that the purpose of
22  Defendants' notice of removal was to delay resolution of the Receiver Motion and prolong
23  Management's fraudulent control of GTII.

24        To be sure, the facts regarding the lack of original jurisdiction are well known to counsel.
25  *See* **Ex. 5, Ex. 6., Ex. 7**. Immediately after receiving the removal notice, Plaintiffs' counsel
26  informed Defendants' counsel of their mistake, requested Defendants stipulate to remand the

---

[1] OTC (formerly known as Pink Sheets) is a financial market in the United States, which provides price and liquidity information for over the counter (i.e., OTC) securities.

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

1  case, and further requested to meet-and-confer with Defendants' counsel pursuant to Local Rule 7-4. **Ex. 1**, at ¶10-11. Plaintiffs' counsel further provided Defendants' counsel with documentary evidence verifying the lack of original jurisdiction. **Ex. 6.** Yet Defendants' counsel ignored the law and evidence, refused to meet-and-confer, and refused stipulate to remand to state court. **Ex. 1**, at ¶12; **Ex. 5.** Egregiously, mere days before filing their notice of removal, Defendants' counsel spoke to the Plaintiffs' counsel about the case, and at no point did they disclose their intended removal. *Id.* at ¶¶7-8. Instead, Defendants concealed their actions to intentionally delay the Nevada State Court action until the very last moment. And the Defendants have so far succeeded in delaying and denying Plaintiffs' relief requested in the Receiver Motion.

In sum, the Court should not excuse Defendants' blatant gamesmanship and disregard for the law. Plaintiffs respectfully request the Court (1) remand the matter to the Eighth Judicial District Court, Business Division, for further proceedings; and (2) enter an award of fees and costs in favor of Plaintiffs.

**II.      REQUEST FOR EMERGENCY RELIEF**

   **A.    EMERGENCY RELIEF IS APPROPRIATE BECAUSE DEFENDANTS' NOTICE OF REMOVAL IS DELAYING A HEARING THAT THE STATE COURT DETERMINED SHOULD BE HELD ON AN EXPEDITED BASIS**

Local Rule 7-4 authorizes a party to file an "Emergency Motion" "for judicial assistance in resolving an emergency dispute" along with a declaration "setting forth" "[t]he nature of the emergency," "[t]he office addresses and telephone numbers of movant and all affected parties," and "[a] statement … certifying that, after participation in the meet and confer process … the movant has been unable to resolve the matter without court action." "An emergency motion in federal court must involve some significant degree of urgency, severity, and irreparability, and it must be a situation a court is well suited to remedy. A matter is, in fact, an emergency when the moving party will be irreparably prejudiced if the court resolves the motion on a normal briefing schedule and is without fault in creating the crisis that requires emergency relief or can show excusable neglect." *Ahern Rentals, Inc. v. Bilodeau,* 2021 WL 3777708, at *2 (D. Nev. Aug. 25, 2021) (quoting *Goldberg v. Barreca,* 2017 WL 3671292, at *5 (D. Nev. Aug. 24, 2017)) (internal quotations omitted). Here, all conditions are met.

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

***First***, while the Receiver Motion is unopposed, this Court lacks any ability to grant relief, as any order of the Court is void, given that it lacks jurisdiction. *See Newtok Vill. v. Patrick,* 21 F.4th 608, 622 (9th Cir. 2021). Because Plaintiffs are unable to seek appointment of a receiver in this Court, their acation is in purgatory until it is remanded by this Court.

***Second***, Plaintiffs will incur immediate, imminent, and irreparable harm if this Court resolves this remand Motion on a normal briefing schedule. **Ex. 1**, at ¶¶2-3. Notably, even before Defendants removed the case, they were obligated to oppose the Receiver Motion, which was supposed to be heard on an expedited basis on July 8, 2024. ECF No. 1-7, at pg. 2. They failed to do so. Other courts have recognized this "troublesome" tactic of waiting to remove only a few days before a hearing on equitable relief. *See e.g., Mercom Group, LLC v. Diati Staffing, LLC*, CV 16-3475 (JBS/JS), 2016 WL 4054921, at *6 (D.N.J. July 26, 2016). Indeed, the tactic allows a defendant to effectively delay a hearing and thus delay answering for their "immediate, irreparable, and ever-growing harm[.]" *Id.* As such, it "just to award fees where Defendants' objectively unreasonable delay has potential to meaningfully harm the Plaintiff." *Id.*

In this case, Plaintiffs sought appointment of a receiver in the Nevada State Court because Management has put Plaintiffs and GTII in immediate, imminent risk of irreparable harm of being delisted by the OTC. ECF No. 1-7, at pg. 6-15. Plaintiffs sought the appointment of a receiver due to Management's gross mismanagement of GTII, including without limitation Management's failure to disclose their financials, ongoing fraud and concealment, self-dealing, conversion, and waste *Id.*; *see also* ECF No. 1-8 (Management's misconduct is extensively detailed in both the Receiver Motion and supporting evidence submitted contemporaneously with the Receiver Motion). Finally, to make matters worse, on July 1, 2024, GTII received a final notice appeared on GTII's public OTC profile warning investors and the public that GTII will be delisted if its financials are not corrected within 15 days ("Final Notice"). **Ex. 1**, at ¶3; **Ex. 2.**

To address this exigency, Plaintiffs filed an *ex parte* motion to shorten the time for the state court to hear the Receiver Motion on July 3, 2024. ECF No. 1-7, at pg. 2. Crediting Plaintiffs' concerns, the Nevada State Court granted the motion, setting the hearing for July 8,

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

1   2024. *Id.* Minutes before the Receiver Hearing, Defendant removed the action to this Court. ECF No. 1, at pg. 3. Thus, if this Court hears this Motion on a regular briefing schedule, Management will remain in control of GTII causing "immediate, irreparable, and ever-growing harm" to GTII and its stockholders. *Mercom,* 2016 WL 4054921, at *6.

At the very least, as a matter of comity and respect for the Nevada State Court's determination that Plaintiff's Receiver Motion merited an expedited hearing, this Court should resolve the motion to remand on an emergency basis. The quicker this Court remands the matter to the Nevada State Court, the quicker the court may reschedule its expedited hearing on the Receiver Motion.

**Third**, Plaintiff is "without fault in creating the crisis that requires emergency relief[.]" *Ahern Rentals, Inc.,* 2021 WL 3777708, at *2. It is Defendants' own conduct that has created the risk of irreparable harm here because, as the Management of GTII, they filed the fraudulent financials in the first place. **Ex. 1**, at ¶¶2-3. Defendants' improper notice of removal threatens to compound that harm by delaying the expedited Receiver Hearing on Plaintiffs' Receiver Motion. In fact, by filing the *ex parte* motion to shorten time in Nevada State Court, Plaintiffs demonstrated their diligence in speeding up proceedings to avoid irreparable harm.

**Fourth**, movant's address and phone number are 10001 Park Run Drive, Las Vegas, Nevada 89145, Telephone: 702-382-0711. **Ex. 1**, at ¶20. This Motion would affect Defendants, whose counsel's address and phone number are 11920 Southern Highlands Pkwy., Suite 103, Las Vegas, Nevada 89141, Telephone: 702-468-0808. *Id.*

**Fifth**, movant was unable to resolve this dispute through the meet-and-confer process. *Id.* at ¶¶10-14. Immediately after receiving the removal notice, Plaintiffs' counsel informed Defendants' counsel of their mistake, requested Defendants stipulate to remand the case, and further requested to meet-and-confer with Defendants' counsel. *Id.* at ¶10. Counsel further informed Defendants' counsel that Plaintiffs would file a motion for remand and seek expedited relief pursuant to Local Rule 7-4. *Id.* at ¶11. Defendants' counsel has refused to meet-and-confer and refused stipulate to remand to state court. *Id.* at ¶X. For the avoidance of doubt, counsel even

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

provided Defendants' counsel evidence verifying the lack of original jurisdiction, which Defendants' counsel simply ignored. *Id.* at ¶10; *see also* **Ex. 5, Ex. 6**.

Accordingly, this Motion satisfies all the requirements under Local Rule 7-4, and this Court should consider it on an emergency basis.

### III. <u>REQUEST FOR REMAND</u>

#### A. THE COURT LACKS ORIGINAL JURISDICTION AND THUS THE CASE MUST BE REMANDED

An action originally filed in state court may be removed to federal court only if the district court could have exercised jurisdiction over such action if initially filed there. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. §1447(c). For any other reason other than a lack of subject matter jurisdiction, must be filed within 30 days of removal. *Id.*

"The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Allen v. Toyota Motor Credit Corp.,* 19-CV-03062-SK, 2019 WL 10944853, at *1 (N.D. Cal. Aug. 1, 2019) (citing *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus,* 980 F.2d at 566.

"To determine whether the removing party has met its burden, a court may consider the contents of the removal petition and 'summary-judgment-type evidence.'" *Mercado v. Jechi, Inc.,* 18-CV-07494-SK, 2019 WL 12338051, at *1 (N.D. Cal. Feb. 12, 2019) (quoting *Valdez,* 372 F.3d at 1117. It is well established that a court must evaluate whether it has jurisdiction based on the circumstances that exist at the time the notice of removal is filed. *See, e.g., Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.,* 159 F.3d 1209, 1211 (9th Cir. 1998).

#### 1. <u>Because the parties are not diverse, the Court lacks diversity jurisdiction.</u>

First, district courts have diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of

different states." 28 U.S.C. § 1332(a)(1). It is well settled that diversity jurisdiction exists "only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dept. of Corr. v. Schacht*, 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005); Wright & Miller, 13E Fed. Prac. & Proc. Juris. § 3605 (3d ed.). Defendants bear the burden of establishing diversity of citizenship such that removal is proper. *Gaus, Inc*., 980 F.2d at 566 (quotations omitted).

Here, the facts are simple. Defendants removed the case based on diversity, alleging that Ms. Griffin is a citizen of the State of Massachusetts. ECF No. 1, at pg. 3. While this may be true, the Pomeroys are undisputedly citizens of the State of Massachusetts. **Ex. 1**, at ¶¶10; **Ex. 5, Ex. 6**. Since both the Pomeroys and Ms. Griffin share their citizenship, the parties lack diversity.

### 2. The Court lacks federal question jurisdiction because the Plaintiffs have not presented a federal question on the face of the complaint.

Second, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 107 S. Ct. at 2429 (quoting *Gully v. First National Bank*, 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* (collecting cases).

Here, Defendants' notice of removal vaguely alleges that this case somehow "arises under and concerns alleged violations of Sections 13 and 15 of the Securities Exchange Act of 1934 [hereinafter the "Exchange Act"]". ECF No. 1, at pg. 2-3. This is false. As clearly set forth in Plaintiffs' well-pleaded complaint, not a single claim alleged by Plaintiffs arise under the Exchange Act. Plaintiffs have brought the following claims, all of which arise out of state law: (1) breach of fiduciary duty, (2) common law fraud, (3) fraudulent concealment, (4) violations of the Nevada Securities Act, (5) Equity dilution / expropriation, (6) accounting, (7) appointment

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

of a receiver under NRS Chapters 78 and 32, (8) conversion, (9) unjust enrichment, (10) civil conspiracy, (11) aiding and abetting, and (12) declaratory relief under NRS 30.010 *et. seq.* and NRS Chapter 78. *See* ECF No. 1-3, at pgs. 18-26. While Plaintiffs' complaint references GTII's fraudulent and delinquent financials, the only claims related to the financials are state claw claims for breach of fiduciary duty, fraud, fraudulent concealment, and appointment of receiver. *Id.*

Further, Plaintiffs' cannot make a claim for violation of the Exchange Act, because there is no private right of action for an alleged violation of the Exchange Act reporting requirements. Over the years, the Supreme Court has viewed "the implication of private remedies in regulatory statutes with increasing disfavor." *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 618 (2d Cir. 2002) (citing *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Alexander v. Sandoval*, 532 U.S. 275, 286–87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102–03, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991); *Olmsted v. Pruco Life Ins. Co. of N.J.*, 283 F.3d 429, 432 (2d Cir.2002)). While several sections of the Exchange Act do provide for express and implied private rights of action,[2] courts have consistently declined to imply a cause of action for shareholders for violations of Sections 13 and 15 of the Exchange Act. *See e.g., Abbey v. Control Data Corp.*, 603 F.2d 724, 730 (8th Cir. 1979) ("While [the Exchange Act] requires the issuers of registered securities to file certain reports with the SEC, it does not expressly confer rights on private parties nor

---

[2] Indeed, Congress authorized private actions under the following sections of the Exchange Act: Section 9(f) (15 U.S.C. § 78i(f)), which provides an express private right of action imposing liability for stock price manipulation; Section 10(b) (15 U.S.C. § 78j(b)) which provides an implied private right of action imposing liability for any manipulative, fraudulent, or deceptive tactic in the purchase or sale of a security under SEC Rule 10b-5 (17 C.F.R. § 240.10b-5); Section 14(a) (15 U.S.C. § 78n(a)), which provides an implied private right of action imposing liability deceptive proxy statements under SEC Rule 14a-9 (17 C.F.R. § 240.14a-9); Section 16(b) (15 U.S.C. § 78p(b)), which provides an express private right of action imposing strict liability for short-swing trading by insiders when the issuer has equity securities registered under applied with Exchange Act Section 12(b) or Section 12(g); Section 18(a) (15 U.S.C. § 78r(a)), which provides an express private right of action imposing liability for false or misleading statements in Exchange Act filings; Section 20(a) (15 U.S.C. § 78t(a)), which provides an express private right of action against persons having control over primary violators of the Exchange Act; Section 20A (15 U.S.C. § 78t-1(a)), which provides an express private right of action imposing liability for insider trading; and Section 29(b) (15 U.S.C. § 78cc(b)), which provides an express private right of action to void contracts that violate Exchange Act provisions or rules.

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

proscribe any conduct as illegal."); *Hallwood Realty Partners*, 286 F.3d at 618 (holding that Plaintiffs did not have a private right of action for damages under reporting provisions of Exchange Act); *see e.g., Myers v. Am. Leisure Time Enterprises, Inc.*, 402 F. Supp. 213 (S.D.N.Y. 1975), aff'd, 538 F.2d 312 (2d Cir. 1976) (same); *see e.g., Kamerman v. Steinberg*, 891 F.2d 424, 430 (2d Cir.1989) ("One complaining of a false or misleading statement in a [Exchange Act disclosure] may seek damages only under Section 18(a) of the Act."); *see e.g., Srebnik v. Dean*, CIVA 05CV01086 WYDMJ, 2006 WL 2790408, at *5 (D. Colo. Sept. 26, 2006) ("I decline to find a private right of action under § 13(d) for Plaintiffs in this case.").

Simply put, Defendants' allegation that this case arises under "violations of Sections 13 and 15" of the Exchange Act (ECF No. 1, at pg. 2-3) is factually and legally meritless. Plaintiffs are the masters of their own claims (*Caterpillar Inc.*, 107 S. Ct. at 2429), which exclusively rely on Nevada state law. ECF No. 1-3, at pgs. 18-26. Since Plaintiffs have asserted no federal claim, nor do not allege the violation of any federal statute, there is no federal question nor original jurisdiction.

### 3. The Court lacks supplemental jurisdiction, because there are only state-law claims.

Third, supplemental jurisdiction only allows federal courts to hear and decide state-law claims when there are also federal-law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Here, there is simply no basis for supplemental jurisdiction, because, as already explained herein, none of Plaintiffs claims arise under federal law. *See* ECF No. 1-3, at pgs. 18-26. Indeed, Plaintiffs have asserted no federal claim, nor do not allege the violation of any federal statute, thus, there can be no supplemental jurisdiction over Plaintiffs' state-law claims. *Id.*

Further, "[s]upplemental jurisdiction is a doctrine of discretion, not of right." *Estate of Demos v. Nevada*, 216CV00324JADCWH, 2017 WL 773866, at *1 (D. Nev. Feb. 28, 2017). The Court may decline to exercise supplemental jurisdiction over state-law claim when, among other things, "the claim raises a novel or complex issue of State law[.]" 28 U.S.C. § 1367(c). Here,

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

there are no federal claims pending before the Court and Plaintiffs' claims implicate complex issues of state law, specifically, appointment of a receiver under NRS 78.650 and NRS 32.010. Plaintiffs' claims require application of these receiver statutes, as well as Management's fiduciary duties owed to its stockholders under NRS Chapter 78. Caselaw addressing whether and to what extent Management is appropriately displaced by a receiver under NRS 78.650 and NRS 32.010 is sparse, and notably, the Nevada Supreme Court has not yet defined what constitutes "gross mismanagement" under the latter statute. ECF No. 1-3, at ¶104(b). Plaintiffs' claims also require resolution of important state-law issues regarding the application of the business judgment rule under NRS 78.138. *Id,* at ¶57. Thus, even if, *arguendo*, there was a mix of both state and federal claims in Plaintiffs' complaint (which there are not), the Plaintiffs' case involves complex and important claims under Nevada law, such the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

Similarly, the Court may decline to exercise supplemental jurisdiction over state-law claims to promote values of judicial economy, convenience, fairness, and comity. *Acri v. Varian Assocs*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). Here, these interests favor declining supplemental jurisdiction. This case involves important and complex issues arising under Nevada corporate law. The Eighth Judicial District Court, Business Division, which has been specifically formed to specialize in Nevada "business matters" arising under NRS Chapter 78,[3] determined that Plaintiffs' Receiver Motion merited an expedited hearing. ECF No. 1-7, at pg. 2. While this Court is of course fully capable of resolving issues involving Nevada corporate law, principles of judicial economy, convenience, fairness, and comity militate against the matter being removed from Nevada's specialized Business Division. That is where the case began, and it is where it should be adjudicated.

---

[3] Rule of Practice for the Eighth Judicial District Court of the State of Nevada (hereinafter "EDCR") 1.33(b) provides for the specialization of judges in cases involving "business matters." EDCR 1.61(a)(1) defines "business matters" as matters requiring decision under NRS Chapters 78-92A, among other matters.

### IV. REQUEST FOR ATTORNEYS' FEES AND COSTS

#### A. FACTS RELEVANT TO AN AWARD OF FEES AND COSTS

As already explained above, Management has put GTII in immediate, imminent risk of being delisted by OTC. **Ex. 1**, at ¶3. Indeed, on July 1, 2024, GTII received its Final Notice from the OTC. *Id.* If these financial disclosures are not corrected within the 15-day "Grace Period," then GTII and its securities will be delisted.

On July 2, 2024, Plaintiffs filed their operative complaint with the Nevada State Court (ECF No. 1-3) and submitted their Receiver Motion on an expedited basis (ECF No. 1-7) Plaintiffs sought the appointment of a receiver due to Management's gross mismanagement of GTII, including without limitation Management's failed financial reporting, ongoing fraud and concealment, self-dealing, conversion, and waste. *Id.* at pgs. 6-15. Both the Receiver Motion and operative complaint were provided to Defendants' general counsel. **Ex. 1**, at ¶5; *see also* ECF No. 1, at pg. 2 (Ms. Griffin admits in her notice of removal that she received these documents through counsel on July 2, 2024).

About three hours later, Defendants' counsel Defendants' counsel, Robert A Rabbat, Esq. ("Rabbat") and Teri Pham, Esq. ("Pham") of Enenstein Pham Glass & Rabbat ("EPGR"), reached out via telephone and email requesting a continuance of the Receiver Hearing. **Ex. 3.** On both the call and in subsequent emails, Plaintiffs' counsel explained that Plaintiffs were unable to grant the continuance in light of the immediacy of the financial disclosure issues and Final Notice. **Ex. 4.** About two hours after the call with Defendants' counsel, Defendants voluntarily appeared for both GTII and Management in the Nevada State Court case and filed a peremptory challenge. *See* ECF No. 1-5. At no point did Defendants' counsel note that they would be removing the matter, nor did they inquire regarding the Plaintiffs' citizenship. **Ex. 1**, at ¶8. To the contrary, their peremptory challenge suggested that they intended to proceed in the Nevada State Court, and that Defendants might even stipulate to a temporary restraining order. *See* ECF No. 1-5.

On July 8, 2024, mere minutes before the Receiver Hearing, Defendants removed the case on the alleged basis of diversity jurisdiction. ECF No. 1, at pg. 3. After the Receiver

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  Hearing, the undersigned emailed Defendants' counsel immediately notifying them of their
2  mistake, requested Defendants stipulate to remand the case, and further requested to meet-and-
3  confer with Defendants' counsel. **Ex. 5**. For the avoidance of doubt, the undersigned also
4  provided Defendants' counsel with documentary evidence verifying the lack of original
5  jurisdiction. **Ex. 6**.

6  Further, counsel repeatedly requested Defendants counsel's "earliest availability to meet
7  and confer" and reiterated that "[t]ime is of the essence." **Ex. 5.** The undersigned informed
8  Defendants' counsel that Plaintiffs would file a motion for remand and seek expedited relief
9  pursuant to Local Rule 7-4 if Defendants refused to stipulate to remand. *Id*. And specifically
10 warned counsel that Plaintiffs would be "seeking their fees and costs incurred as a result of the
11 removal pursuant to 28 U.S.C. § 1447(c) should they be forced to move to remand." *Id*.
12 Nevertheless, Ms. Pham stated that the information regarding the Pomeroys' Massachusetts
13 citizenship was somehow "not sufficient" and that they will not "stipulate to remand." *Id*.

14 On July 10, 2024, Mr. Rabbat finally agreed to meet-and-confer via phone but stated that
15 he was only available the following day on July 11, 2024. **Ex. 5**. Once again, the undersigned
16 reiterated that Plaintiffs could not delay any longer because "GTII currently faces imminent
17 delisting" by the OTC. *Id*. But Defendants' counsel made their position clear that they were
18 unwilling to remand to state court despite the lack of diversity. *Id*.

19 Finally, Defendants and their counsel have maintained their removal despite having no
20 factual or legal basis for doing so. First, Defendants' counsel evidently failed to do any due
21 diligence regarding the parties' citizenship. For example, even a simple Google search would
22 have shown Mr. Pomeroy is a resident of Essex County, Massachusetts. **Ex. 1**, at ¶13. Mr.
23 Pomeroy's public LinkedIn profile even shows this. **Ex. 7.** Either failed to do any due diligence
24 or they egregiously ignored the publicly evidence in front of them.

25 Second, Defendants' counsel was indisputably made aware of the Pomeroys'
26 Massachusetts citizenship the same day they filed the notice of removal. **Ex. 5**. Defendants'
27 counsel was even provided Defendants' counsel with documentary evidence verifying the lack of
28 diversity**. Ex. 6.** These documents included emails directly from Mr. Pomeroy confirming the

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

Pomeroys' Massachusetts citizenship, as well as each of the Pomeroys' Charles Shwab brokerage statements confirming their Massachusetts citizenship. *Id*.

Amazingly, Defendants and their counsel ignored all of this and refused to remand. **Ex. 1,** at ¶14; **Ex. 5.** It is abundantly clear that the purpose of Defendants' removal was to delay resolution of the Receiver Motion and prolong Management's fraudulent control of GTII. This is precisely the sort of "troublesome" behavior that warrants fees and costs under 28 U.S.C. § 1447(c).

**B.  PLAINTIFFS ARE ENTITLED TO FEES AND EXPENSES UNDER 28 U.S.C. § 1447(C)**

The federal removal statute provides that "[a]n order remanding [a] case [to state court] may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This does not create "a strong presumption in favor of awarding fees" or a "strong bias against fee awards." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 137, 138 (2005). Likewise, this standard does not require "a showing that the unsuccessful party's position was 'frivolous, unreasonable, or without foundation.'" *Id.* at 139. Neither does it require a showing of bad faith. *Mints v. Educ. Testing Serv.,* 99 F.3d 1253, 1260 (3d Cir. 1996).

In fact, fees are appropriately awarded in the Ninth Circuit "when a defendant's removal, while "fairly supportable," was wrong as a matter of law." *Balcorta v. Twentieth Century-Fox Film Corp.,* 208 F.3d 1102, 1106, n. 6 (9th Cir. 2000)."The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party[.]" *Id.* at 140. Accordingly, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. In the Ninth Circuit, fees are available if "the relevant case law clearly foreclosed the defendant's basis of removal." *Lussier v. Dollar Tree Stores, Inc.,* 518 F.3d 1062, 1066 (9th Cir. 2008).

Here, Defendants removed this case without any factual or legal basis for doing so. And it is abundantly clear the purpose of Defendants' removal maneuver was to delay resolution of

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  the Receiver Motion and prolong Management's fraudulent control of GTII. There is simply no basis, arguable or otherwise, for original jurisdiction. Accordingly, the Court should award Plaintiffs' their fees and costs under § 1447(c).

### 1. **<u>Defendants knew or should have known this case did not have complete diversity and removed the matter to avoid the Receiver Hearing.</u>**

The "defendant has [the] burden of establishing [that] removal is proper." *Houden v. Todd,* 348 F. App'x 221, 223 (9th Cir. 2009) (citing *Gauss,* 980 F.2d at 566. Accordingly, "a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties." *Houden,* 348 F. App'x at 223 (citing *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001). When grounds for removal are not evident from the fact of the pleading, the case is not removable at that stage. *Doiel v. Smith's Food & Drug Centers, Inc.,* 2019 WL 4731947, at *2 (D. Nev. Sept. 27, 2019); *see Chan Healthcare Group, PS v. Liberty Mut. Fire Ins. Co.,* 844 F.3d 1133, 1142 (9th Cir. 2017)(holding that if defendants are unaware of the grounds for removal, the 30 day deadline does not run).

However, when a defendant decides to file a notice of removal, "[l]awyers for defendants … must investigate rather than assume jurisdiction; to do this, they first must learn the legal rules that determine whose citizenship matters[.]" *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.,* 350 F.3d 691, 694 (7th Cir. 2003); *Master v. Quiznos Franchise Co.,* 2007 WL 419287, at *3 (D.N.J. Feb. 1, 2007) (remanding case where Defendants failed to investigate ultimate citizenship of LLC parties and therefore could not establish complete diversity). The failure to conduct such an investigation can justify awarding fees under § 1447(c). *See Cardinal Health 200, LLC v. Allscripts, LLC,* No. 2:13-CV-305, 2014 WL 971987, at *3 (S.D. Ohio Mar. 12, 2014) (rejecting argument that "removal on diversity grounds was objectively reasonable based upon the allegations in the Complaint" and awarding fees because "Defendants … failed to do any investigation of the citizenship of the parties").

Here, Defendants failed to conduct any investigation necessary to ascertain the citizenship of all the parties and ensure complete diversity of citizenship before filing their notice

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

of removal. **Ex. 7**. Defendants could have discovered this had they employed an iota of due diligence. *Id.* Defendants further ignored the lack of diversity even after they were provided documentary evidence clearly showing the same. **Ex. 6**. And even after Defendants' counsel was informed that the Pomeroys were citizens of Massachusetts, they flat out ignored the facts presented to them. Defendants chose instead to waste this Court and the parties' resources with a baseless notice of removal. Of course, this is because Defendants' actions were never about finding out Plaintiffs' citizenship. Rather, Defendants removed the action minutes before the Receiver Hearing could be heard by the Nevada State Court. That day is no coincidence. That was the day in which Management would lose their fraudulent control of GTII.

Finally, Plaintiffs' state court complaint does not excuse Defendants' failure to investigate Plaintiffs' citizenship. *See Cardinal Health*, 2014 WL 9711987, at *3 (awarding fees under § 1447(c) and rejecting Defendants' argument that they could rely solely on the allegations in the Complaint to determine Plaintiff's citizenship); *see also Negrin-Perez v. Home Depot U.S.A., Inc.*, 2006 WL 8433578, at *3 (S.D. Fla. Apr. 18, 2006) ("[P]laintiffs need not—and typically do not—allege their citizenship in state court complaints."). Nor does the thirty-day deadline for removal in § 1446(b)(1) justify Defendants' failure to investigate. The Ninth Circuit imposes no duty to investigate citizenship within that thirty-day timeframe and provides a safe harbor from untimeliness if a party cannot determine diversity solely from the initial complaint. *See Hanes v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695. But where, as here a party does not take advantage of the *Hanes* safe harbor, it must properly investigate the citizenship of the parties before filing its notice of removal. Defendants did not do so, and the Court should award Plaintiffs their fees under § 1447(c) on those grounds alone.

    **2.**  **<u>Defendants had no basis to maintain their notice of removal after Plaintiffs' counsel provided evidence showing the lack of complete diversity.</u>**

As this Court previously stated, "[s]ometimes in litigation, you've got to know when to hold 'em, know when to fold 'em, know when to walk away, and know when to run." *Lall v. Corner Inv. Co.*, 2023 WL 6197334, at *1 (D. Nev. Sept. 21, 2023). A court may sanction a party that "d[igs] in [its] heels" and "refus[es] to admit that … aspects of its position [a]re

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

unsupported by the underlying facts or well-settled law." *Id*. Federal courts, including at least one court in this Circuit, can and do award fees under § 1447(c) against a party that fails to withdraw a diversity-based notice of removal after learning from opposing counsel that they lacked diversity. *See Connor v. Bart Guerrero Trucking*, 2019 WL 3025205, at *2 (W.D. Wash. July 11, 2019) ("Defendant had the opportunity to withdraw its notice of removal, but chose not to. As a result, Plaintiff was required to file this unnecessary motion to remand. Defendant's refusal to withdraw his notice of removal—in light of Plaintiff's timely objection under the forum defendant rule—was objectively unreasonable."); *Colorado Energy Mgmt., LLC v. Lea Power Partners, LLC*, 2012 WL 760192, at *1 (S.D.N.Y. Mar. 8, 2012) (awarding fees under § 1447(c) where "[respondent's] counsel … stated that he did not know the citizenship of his client's members" and "refused to withdraw its notice of removal after receiving undisputed evidence that there was no diversity jurisdiction, necessitating the present motion"); *Welgs v. Dolan*, 2011 WL 3444281, at *3 (N.D. Ohio Aug. 8, 2011) (awarding fees under § 1447(c) where "Defendants were put on notice and given opportunities to withdraw the removal notice before Plaintiffs were forced to file their motion to remand").

In this case, literally within hours of the filing of Defendants notice of removal, Plaintiffs' counsel informed them that the Pomeroys are citizens of Massachusetts. Ex. 5. Plaintiffs followed up with several emails requesting to meet-and-confer, to hopefully avoid having to file this emergency motion to remand. *Id.* Yet, Defendants simply refused to remand the matter back to state court. *Id.* Under such circumstances, Defendants knew of the true facts related to Plaintiffs' citizenship (**Ex. 6**) and they steadfastly refused to withdrawal their improper removal. Defendant's obstinacy to the inevitable is only predicated on one fact, delay of the Receiver Hearing. That is the predicate bad faith and dilatory motives that warrants an award of fees, especially when Defendants were warned and did nothing to heed the warning.

### C. PLAINTIFFS' FEES AND COSTS ARE REASONABLE

Finally, Local Rule 54-14 requires that a party moving for fees set forth a "reasonable itemization and description of the work performed," a "brief summary" of the time, labor, novelty, difficulty, and skill required by the work performed, and an attorney affidavit

MAC:17683-002 5532777_1 7/10/2024 9:23 PM
MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

authenticating billing information and confirming that the fees and costs charged are reasonable." *Lebsock v. Gen. Motors,* 2023 WL 7042568, at *4 (D. Nev. Oct. 26, 2023).

Here, as noted above, Marquis Aurbach Chtd. ("MAC") is counsel for Plaintiffs in this matter. **Ex. 1**, at ¶15. Plaintiffs hired MAC at their ordinary rates. *Id.* Plaintiffs seek a total award of **$11,825** in attorney's fees related to the present motion, which was caused entirely by Defendants' obstinance and refusal to remand the matter. *Id.* This sum being sought is reasonable in light of the legal experience and the fees generally charged in this community. *Id.* As set forth below, all of the legal services rendered were reasonable and necessarily incurred in having to file this Motion. *Id.*

First, the undersigned was the primary attorney involved in researching and drafting the present Motion and related declarations. *Id.* at ¶16. He is a partner at MAC with more than 5 years of experience with complex civil cases and am a highly sought-after litigator in Nevada. *Id.* Within this case, he participated extensively with the Motion, including handling the correspondence with opposing counsel and drafting the motions. *Id.* His hourly rate is $350 per hour, which is commensurate with comparable rates for attorneys that have similar experience, based upon a comprehensive survey of Nevada commercial litigators. *Id.* In drafting the motion, he expended 22.6 hours of time, for a total cost of $**7,910**.

Similarly, Chad F. Clement, Esq. is also an experienced litigator at MAC with about 15 years of experience. *Id.* at ¶17. Mr. Clement has extensive experience with both federal and state motion practice. *Id.* Mr. Clement has taken a hands-on approach with this Motion on strategy, reviewing drafts, and reviewing correspondence. *Id.* His hourly rate in this matter is $450 per hour, which is commensurate with comparable rates for attorneys that have similar experience, based upon a comprehensive survey of Nevada commercial litigators. *Id.* In drafting the motion, he expended 8.7 hours of time, for a total cost of **$3,915.** *Id.*

Next, the above attorneys' fees are reasonable and should be awarded. *Id.* at ¶18. The quality of MAC as an advocate is well known within the Nevada legal community. *Id.* MAC is AV rated by Martindale-Hubbell and is listed in Martindale-Hubbell's registry of Preeminent Lawyers. *Id.* As set forth above, the counsel and supervising attorneys in this matter are both

partners at MAC, skilled litigators with years of experience, and have an excellent reputation in the legal community for competency in civil litigation and quality legal work. *Id.*

Finally, MAC's efforts in litigating this Motion have included researching, drafting, revising briefs, and communicating with opposing counsel. *Id.* at ¶19. All of this work was necessary to achieve the ultimate result of prevailing on the Motion. *Id.* None of the work performed by MAC on behalf of Plaintiffs has been done in a cursory manner. *Id.* Instead, all work was thoroughly researched, supported by applicable law and evidence, and finalized after multiple drafts and iterations to reach a final product. *Id.* Each task performed by MAC was essential to achieving the end result and was of the highest character and caliber. *Id.* Accordingly, Plaintiffs anticipate a favorable ruling on the Motion. *Id.*

Accordingly, Plaintiffs seek an award of **$11,825** in attorney's fees related to the present Motion, which was caused entirely by Defendants' obstinance and refusal to remand the matter. And that is the reality, Defendants' counsel knows that they can wrongfully force Plaintiffs to incur attorneys' fees to avoid the appointment of a receiver. If Plaintiffs do nothing, Defendants' will continue to commit fraud and steal funds from GTII and its stockholders; and if Plaintiffs fight to enforce the law, they will incur fees. That is the gambit of sophisticated parties that do not fear the rules and act with impunity. Section 1447 provides a mechanism to stop such actions and discourage frivolous filings.

## V. <u>CONCLUSION</u>

In sum, the Court should not excuse Defendants' blatant gamesmanship and disregard for the law. Plaintiffs respectfully request the Court (1) remand the matter to the Eighth Judicial

/ / /

/ / /

/ / /

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

1  District Court, Business Division, for further proceedings; and (2) enter an award of fees and
2  costs in favor of Plaintiffs.
3        Dated this 10th day of July 2024.

MARQUIS AURBACH

By   */s/ Alexander K. Calaway*
Chad F. Clement, Esq.
Nevada Bar No. 12192
Alexander K. Calaway, Esq.
Nevada Bar No. 15188
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorney(s) for Plaintiffs*

MAC:17683-002 5532777_1 7/10/2024 9:23 PM

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **PLAINTIFFS' EMERGENCY MOTION TO REMAND AND REQUEST FOR FEES AND COSTS** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 10th day of July 2024.

☒   I further certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

☐   I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Robert A. Rabbat, Esq.
Teri Pham, Esq.
Enenstein Pham Glass & Rabbat
3960 Howard Hughes Parkway
Suite 280
Las Vegas, NV 89169
702-468-0808
rrabbat@epgrlawyers.com
tpham@epgrlawyers.com
ttpassistant@epglawyers.com
lverbanik@epgrlawyers.com
*Attorney for Defendant Kathy M. Griffin*

　　　　　　　　　　　*/s/ C. Hatfield*
　　　　　　　　　　　An employee of Marquis Aurbach

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:17683-002 5532777_1 7/10/2024 9:23 PM